UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN MANUEL GARCIA,<br><br>Defendant. | No. 1:16-cr-00149-DAD-BAM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582<br><br>(Doc. No. 30) |

Pending before the court is defendant Juan Manuel Garcia's motion for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is based upon the risks to defendant posed by the ongoing coronavirus ("COVID-19") pandemic. (Doc. No. 30.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On January 7, 2019, following his plea of guilty to being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), the court sentenced defendant Garcia to the custody of the U.S. Bureau of Prisons ("BOP") for a 46-month term of imprisonment, to be followed by a 36-month term of supervised release. (Doc. Nos. 14, 28, 29.) The court also imposed the mandatory $100 special assessment. (*Id.*) Defendant is currently serving his sentence at Federal Correction Institution, Forrest City Medium ("FCI Forrest City Medium") in Forrest City, Arkansas. (Doc. No. 30 at 12.) Defendant has served 29 months of his 46-month

1

sentence (63.8%), and with good time credits, his projected release date is May 23, 2021.  (Doc. Nos. 30 at 13; 34 at 3.)

On June 3, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 30.)  The government filed its opposition to the motion on July 15, 2020, and on July 22, 2020, defendant filed his reply thereto.  (Doc. Nos. 34, 35.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.") (citation omitted).  Those limited circumstances include compassionate release in extraordinary cases.  *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020).  Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP.  18 U.S.C. § 3582(c)(1)(A) (2002).  Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court.  18 U.S.C. § 3582(c)(1)(A) (2018).  In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

---

[1]  If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a).  If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.*  "Appeal to the General Counsel is the final administrative appeal." *Id.*  When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

2

>   (i)   extraordinary and compelling reasons warrant such a reduction; or
>
>   (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . ..

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also*

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

3

*United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

4

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.    Administrative Exhaustion**

Here, the parties do not dispute that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 30 at 15–19; 34 at 3.) Accordingly, the court will turn to the merits of defendant's motion.

**B.    Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or

> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Garcia argues that extraordinary and compelling reasons warranting his compassionate release exist because: (1) he is a Latino male; (2) he has a history of drug use, including smoking marijuana and methamphetamine; and (3) he is incarcerated in FCI Forrest City Medium, which has confirmed cases of COVID-19 and is located in an area of Arkansas "that lacks capacity to adequately treat those seeking treatment." (Doc. No. 30 at 14, 27.) Defendant contends that these facts "render him especially vulnerable to contracting COVID-19," and that he is "at risk of infection, severe illness, and possibly death." (*Id.*)

6

The government counters that "despite his ethnicity and prior drug use, [defendant] is not eligible for compassionate release" because: (1) he is an otherwise healthy 28-year-old man with no underlying health conditions; (2) the CDC does not recognize race and ethnic minority statuses as high-risk factors; (3) he has a lengthy criminal history, including convictions for illegal firearms possession and drug trafficking offenses, which shows that "he is a continuing danger to the community"; and (4) his "record evidences an inability to refrain from committing crimes or follow court orders . . . ." (Doc. No. 34 at 6–9.) The government contends that "[i]n the present pandemic, [defendant] Garcia's circumstances are closer to ordinary than 'extraordinary' and granting him a sentence reduction would not satisfy the 18 U.S.C. § 3553(a) factors." (*Id*. at 11.)

In reply, defendant argues that the CDC has updated its website and "now indicates that smoking is a medical condition that may put an individual at an increased risk for severe illness," and thus, defendant's history of smoking marijuana and methamphetamine "alone may put him at increased [risk] of severe illness from COVID-19 infection." (Doc. No. 35 at 2) (citing *People Who Are at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ people-at-higher-risk.html (last updated July 17, 2020)). In addition, defendant argues that the CDC acknowledges that "long-standing systemic health and social inequities have put some members of racial and ethnic minority groups at increased risk of getting COVID-19 or experiencing severe illness, *regardless of age*." (*Id.*) (quoting *COVID-19 in Racial and Ethnic Minority Groups*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/ racial-ethnic-minorities.html (last accessed July 23, 2020)). Specifically, defendant points to the higher hospitalization rates for the Hispanic or Latino community—approximately 4 times that of non-Hispanic white persons. (*Id.*)

Regarding the current conditions at FCI Forrest City Medium, defendant Garcia does not dispute that as of the date of his reply brief (July 22, 2020), one prisoner and five staff members were confirmed active COVID-19 cases. (*Id*. at 4.) The court notes that as of August 4, 2020, the BOP now reports that eleven prisoners and ten staff members are confirmed as active COVID-19 cases. *See* https://www.bop.gov/coronavirus/ (last reviewed August 4, 2020). Thus, it appears

1 that over a two-week period, the active COVID-19 virus cases at FCI Forrest City Medium went
2 from 6 to 21.
3        While this recent development is of course concerning, the court is not persuaded that FCI
4 Forrest City Medium is currently unable to adequately manage their confirmed COVID-19 cases
5 or to appropriately treat defendant Garcia if he were to contract the virus.  In addition, although
6 defendant argues that his history of drug use "*can* cause acute heart problems" and "*can* also
7 contribute to chronic conditions such as heart or lung damage," (Doc. No. 35 at 3) (emphasis
8 added), he does not assert that he actually currently suffers from any of those conditions—let
9 alone that FCI Forrest City Medium is unable to manage them.  *See United States v. Ayon-Nunez*,
10 No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020) ("Chronic conditions
11 that can be managed in prison are not a sufficient basis for compassionate release.")  In any event,
12 defendant has not demonstrated that he is currently suffering from a serious medical condition
13 "that substantially diminishes [his] ability [] to provide self-care . . . and from which he [] is not
14 expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).  Defendant's history of smoking,
15 by itself, is not a serious medical condition.  *See United States v. Lewin*, No. 1:15-cr-198-SAG,
16 2020 WL 3469516, at *4 (D. Md. June 25, 2020) ("Although the CDC has recognized that
17 smoking can lead to the development of immunocompromising illness, there is no evidence in
18 Lewin's medical records to substantiate such a claim.") (internal citations omitted); *United States*
19 *v. Tranter*, No. 1:17-cr-22-HAB, 2020 WL 3841268, at *4 (N.D. Ind. July 8, 2020) (finding no
20 compelling and extraordinary reasons exist where defendant's "status as a former smoker could
21 put him at an increased risk for severe illness" but where he "identified no adverse health effects
22 resulting from his smoking past"); *United States v. Franklin*, No. 07-cr-178-JDB, 2020 WL
23 4049917, at *3 (D.D.C. July 20, 2020) (noting that "smoking" is "recognized by the CDC only as
24 [a] condition[] that *might* place a person at increased risk of severe illness from COVID-19, rather
25 than as [a] condition[] that *do*[*es*] pose such a risk") (internal quotation omitted).  Moreover,
26 although the CDC has recognized that Latino individuals have a higher rate of COVID-19-
27 associated hospitalizations, the fact that because defendant is Latino he might face a higher risk of
28 /////

8

severe illness from COVID-19 if contracted, by itself, is not an extraordinary and compelling reason for compassionate release.

The court concludes that defendant has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A) and therefore will deny his motion.

**C.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Garcia's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[4]  *See Parker*, 2020 WL 2572525, at *11.

The government argues that a reduction in defendant Garcia's sentence would not be consistent with consideration of those sentencing factors because he "was a self-admitted long-time Bulldog [criminal street] gang member who possessed a loaded stolen firearm in conjunction with drug trafficking, has prior convictions for illegal firearms possession, multiple prior violations of supervision, and committed new offenses while on release or supervision for prior offenses."  (Doc. No. 34 at 9.)  In his reply, defendant argues that his "criminal history is related to his addiction and his membership in a Fresno street gang" and that he "has renounced his gang membership and has expressed sincere desire and demonstrated efforts to remain sober and change his life."  (Doc. No. 35 at 4.)

/////

---

[4] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

As noted above, defendant is currently serving a 46-month sentence following his plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Doc. Nos. 14, 28, 29.) With his acceptance of responsibility acknowledged, the presentence report concluded that his total offense level was 17, that his criminal history category was V, and his advisory sentencing guideline range therefore called for a term of imprisonment of between 46 and 57 months. (Doc. No. 26 at 3, 6.) The probation officer did not identify any factors that would warrant a departure from the applicable sentencing guideline range. (*Id.* at 18–19.) The probation officer recommended a mid-guideline sentence of 51 months in BOP custody, explaining that all previously-imposed sanctions had not dissuaded defendant Garcia from engaging in repeated criminal conduct and noting that the defendant had not taken advantage of the opportunity of completing the Delancey Street Program as provided to him in his plea agreement. (*Id.* at 20–21.)[5] Pursuant to the parties' plea agreement, the government argued for a sentence at the low end of the guideline range. (*Id*. at 18.) After considering the § 3553(a) factors, the undersigned sentenced defendant to a low end of the guideline range sentence of a 46 month term of imprisonment. (Doc. No. 95.)

Defendant Garcia's extensive criminal history resulted in a score of 10 points, placing him in category V of the Sentencing Guidelines. (Doc. No. 26 at 3, 10.) He had not only suffered prior drug trafficking convictions but, as the presentence report noted, in this offense defendant possessed the stolen firearm in connection with another felony offense in that he was also found in possession of 27.5 grams of methamphetamine, 38 Xanax pills, marijuana, and 13 Vicodin and Cialis pills, two cell phones, $318 in currency, all of which was indicative of his drug trafficking. (*Id.* at 6.) Finally, it was reported that defendant had been a member of the Bulldogs criminal

---

[5] It is notable that as part of the defendant's plea agreement it was agreed by both the government and the defendant that his sentencing in this case would be delayed until after his successful completion of the two-year long, rigorous Delancey Street residential rehabilitation program. (Doc. No. 14 at 4.) The court followed the parties' agreement in this regard and, on February 27, 2017, ordered defendant Garcia released on conditions for his immediate transport to the Delancey Street program. (Doc. Nos. 16, 17.) Unfortunately, on August 22, 2018, defendant Garcia absconded from that program and a few days later was arrested and ordered detained for violating the conditions of his pretrial release in this case. (Doc. Nos. 19–22.)

street gang for over 11 years.  (*See id.* at 14, 21; Doc. No. 35 at 4–5.)  In light of this background, consideration of the risk of recidivism on the part of the defendant would weigh against the granting of compassionate release.  *See, e.g.*, *United States v. Drummondo-Farias*, No. 1:12-cr-001740-JMS, 2020 WL 2616119, at *6 (D. Haw. May 19, 2020) (denying compassionate release to a defendant in part because he had been twice convicted of drug offenses).

In addition, the court is not persuaded that defendant has established his post–offense rehabilitation since his sentencing less than two years ago.  Neither defendant's motion nor his reply brief describe the rehabilitation efforts that he has purportedly undertaken while in prison, beyond stating that "during his time in custody, it appears he has had no disciplinary infractions." (Doc. No. 35 at 5.)  In fact, defendant has presented no argument or evidence supporting his claimed rehabilitation.  *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases). Moreover, even if defendant Garcia had demonstrated his full rehabilitation since January 7, 2019, rehabilitation alone is not enough to warrant compassionate release.  *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Lastly, as of the date of this order, defendant Garcia has served 29 months of his 46-month sentence.  The sentence imposed in his case was already at the low end of the advisory sentencing guidelines range.  Therefore, granting defendant's compassionate release motion would reduce his prison sentence to 29-months, well below the advisory sentencing guideline range.  In the court's view, a 29-month sentence would not adequately reflect the seriousness of defendant's offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.  *See* 18 U.S.C. § 3553(a); *United States v. Purry,* No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *United States v. Shayota,* No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release

/////

11

analysis, with a longer remaining sentence weighing against granting any such motion.") (citation omitted).[6]

### CONCLUSION

Because defendant Garcia has failed to demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A) or that his release from imprisonment at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 30) is denied.

IT IS SO ORDERED.

Dated: **August 4, 2020**

UNITED STATES DISTRICT JUDGE

---

[6] Defendant alternatively asks this court to "amend the conditions of supervision to require him to serve what would have been the remaining portion of his custodial term in home confinement," given that he is eligible for home confinement in January 2021 and he is anticipated to be released from custody in May 2021. (Doc. No. 35 at 5.) However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-cr-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice,* No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence"); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020).